PEOPLE ex rel. SUTTON v. HARRIS.

(Supreme Court, Appellate Division, Second Department. June 7, 1912.)

HABEAS CORPUS (§ 85*)—PROCEEDINGS FOR RELIEF—EVIDENCE.

On habeas corpus to obtain discharge from custody on a charge of grand larceny by obtaining money on an assignment of income by means of representations that the relator had an income to be due and not then assigned, evidence *held* not sufficient to show any previous valid assignment, so as to authorize a commitment.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 77, 78; Dec. Dig. § 85.*]

Appeal from Special Term, Kings County.

Habeas corpus by the People of the State of New York, on the relation of McWalter B. Sutton, against Moses J. Harris, a Magistrate of the City of New York. From an order of Special Term dismissing writ of habeas corpus, relator appeals. Order reversed, writ sustained, and relator discharged from custody.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

Max Brown, of New York City, for appellant.

Hersey Egginton, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for respondent.

WOODWARD, J. Richard D. Monaghan, on the 23d day of August, 1911, laid an information before a Magistrate's Court in the Borough of Brooklyn, charging the relator with the crime of grand larceny, the specifications being, in substance, that the relator called upon him and represented that he had an income of about $2,500 per year, payable .quarterly, from the estate of his deceased father, that $750 of this amount would be due on the 1st day of May following, and that no part of the same had been assigned or disposed of; that relator stated that if the deponent would loan him the sum of $450, he (the relator) would execute and deliver to deponent an assignment of $450 out of said income of $750, and also give a promissory note due May 1, 1911, for a similar amount; that, relying upon these statements, deponent agreed to make such loan; that the relator executed and delivered a writing purporting to be an assignment of the sum of $450 from the income, and deponent thereupon delivered to the relator the sum of $450; that subsequently, and on the 2d day of May, 1911, "your deponent caused to be presented at the office of Oscar Passavant, executor of the estate of Geo. W. Sutton, deceased, where the aforesaid income to this defendant is payable, the annexed assignment, who referred deponent's representative Samuel G. Lockwood to his attorneys, and the attorney for the estate, Marshal Stearns. Your deponent has been informed by said Samuel G. Lockwood that the said Marshal Stearns refused to recognize said assignment or to pay any moneys out on it because of a prior assignment of said income of $750 from the estate of said George W. Sutton, deceased,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

made by the defendant herein to one Philip Star, dated on or before February 4, 1911. Your deponent asks that the annexed affidavit of said Marshal Stearns be made a part thereof, and upon the foregoing, and the said affidavit charges the said McWalter B. Sutton with the crime of grand larceny and prays that he be apprehended and held to answer according to law."

The "annexed assignment" is an instrument in the form of an assignment, and provides that in consideration of $1, and other valuable considerations, the relator sells, assigns, transfers, and sets over "unto the said Richard D. Monaghan the sum of four hundred and fifty ($450) dollars, to secure a certain promissory note, made this 25th day of March, 1911, payable on the 1st day of May, 1911, from the quarter annual income due me from the estate of my father, George W. Sutton, deceased, which said income is due and payable on the 1st day of May, 1911, to have and to hold the said sum of four hundred and fifty ($450) dollars unto his heirs, executors and assigns, and that I hereby assign all my right, title and interest in and to the said sum of four hundred and fifty ($450) dollars from my said income of May 1, 1911."

The affidavit of Marshal Stearns, referred to above, states that he is the attorney of the estate of George W. Sutton, deceased, and that he received a letter from Oscar Passavant, executor of said estate, of which a copy is set out, giving notice that one Philip Star claimed to be entitled to the sum of $750 out of the income of the estate to become due on the 1st day of May, 1911, and that thereafter, and on the 2d day of May, 1911, "one Max Brown, who represented himself to be the attorney for said Philip Star, called at the office of your deponent and exhibited the original assignment made by one McWalter B. Sutton on or before February 4, 1911, of the income due said Sutton from said estate on May 1, 1911, to said Philip Star, and then and there received a check from your deponent to the order of Max Brown, attorney for Philip Star, in the amount of $510, which sum was all but $100 of the income due said McWalter B. Sutton from the estate of said Geo. W. Sutton, deceased, May 1, 1911." Samuel G. Lockwood makes an affidavit that the facts stated by the complainant, in so far as they are based on information coming from him, are true, and upon this information, without further examination or inquiry, a warrant was issued, and the relator is now in custody by virtue of said warrant, as the return to the writ of habeas corpus now before us shows. Upon the hearing at Special Term the learned court dismissed the writ, and the relator appeals to this court.

There is not a single allegation of fact anywhere in the papers to show that there was ever a valid assignment of this income from the relator to Philip Star. Mr. Star, in his letter to Oscar Passavant, the executor of the estate, does not make any such claim. He simply asks the executor to "take notice that I am holding an assignment of $750 against the income of Dr. W. B. Sutton which will become due May 1, 1911." This is not an allegation that McWalter B. Sutton, the relator, had made an assignment of this sum, assuming the letter to be competent evidence of the fact, if it existed, and the affidavit

of Marshal Stearns does not show that he ever made such an assignment; his affidavit says that Max Brown, representing himself to be the attorney of Philip Star, called at his office and exhibited the original assignment, and that this attorney then received deponent's check for "$510, which sum was all but $100 of the income due," etc. But the original assignment, according to the claim of Mr. Star, was for $750, so that there is nothing to show that Philip Star ever had such an assignment as he claims in his letter, and Mr. Stearns does not tell us how he knew that Max Brown exhibited the "original assignment made by one McWalter B. Sutton," for he nowhere suggests that he was familiar with his signature, or that he took any pains to examine said original assignment, and no such assignment is contained in the record, although it must have been in the possession of the executor of the estate or his attorney if it was ever paid. So far as appears from the affidavits, the so-called "original assignment" may have been forged, or it may not have been an assignment at all. We are nowhere shown the contents of this alleged "original assignment," and when a man's liberty is at stake, we ought at least to be able to say, from a perusal of the "so-called assignment," whether it amounted in law to such an assignment. We pass over the question of whether the relator had the power to assign this income, because we are unable from anything in the record to determine this.

So far as this record shows, the relator gave a note for $450 on the day of the execution of this alleged assignment. By the assignment it is declared that it is "to secure a certain promissory note, made this 25th day of March, 1911, payable on the 1st day of May, 1911," and it is not shown that this note has not been paid. We do not find any evidence before the magistrate that McWalter B. Sutton had made any previous assignment of this income. The letter of Philip Star does not allege that the assignment which he held was made by McWalter B. Sutton. It does not appear from the record that the relator is Dr. W. B. Sutton, and there is just as strong a presumption that this alleged assignment might have been forged as there is that the relator made it and then made a second assignment of the same. But the letter of Philip Star to Oscar Passavant is not evidence of anything; it is mere hearsay, and the whole case is open to this general objection that it is made up of what some one other than the persons making the affidavits has been told by some one else.

The order appealed from should be reversed, and the writ sustained, and the relator be discharged from custody. All concur.